The next case is Anderson & Anderson v. North American Foreign Trade Corporation. Thank you, Your Honors, and may it please the Court, Alexander Genoso is counsel for plaintiff's appellants in the case against the Pennanapoli MAPS. Simply put, this case regards services rendered by a felon's capital e, which exceeds over $11 million as a result of this arrangement. The felons have received nothing. It is the role of the Court to administer justice. MAPS has for years obstructed the importance of this Court to not lose sight of that fact. Even Judge Eileen Branson, who would go on to dismiss the case without prejudice in the State Court, remarked on the record that the documents appear to show that, without a doubt, MAPS reduced the arbitration award to cash value. She continues, If that were true then, of course, there is nothing more than a calculation to be made. In summary of the State Court case facts for which conduct was crucial early on in 2012, a defendant moved to dismiss the plaintiff's breach of contract claim, which Judge Branson granted. The appellate division unanimously reversed, holding that, although it expired on December 31, 2009, the 2009 retainer agreement provided for the payment of the agreed-upon contingency fee if the judgment granted enforcement of the arbitral decision was issued by the Chinese Court prior to the expiration date. It is undisputed that a copy of such judgment issued by the Shenzhen Intermediate People's Court on November 3, 2009 is annexed to the complaint. This is not only undisputed, but is indisputable. Thus, the plaintiff sought to move several times for summary judgment, although MAPS and the Court obstructed each attempt. First, in August of 2013, plaintiffs were forced to decide between amending the complaint or moving for summary judgment. In 2016, the defendant and the Court wrongfully insisted that a noted issue was required before summary judgment. As in Goldheart International Limited v. Vulcan Construction Corporation, this, cited in Mr. Collins' brief, discontributes New York law and wrongfully frustrated plaintiffs' motion for summary judgment. Regarding discovery, plaintiffs had produced thousands of documents in 2012 and 2013, which would— Excuse me, Mr. Genoso. I'm having a little trouble—first of all, I'd like, if you could, to slow down just a little bit, but I'm having trouble understanding what this has to do with the statute of limitations issue, which is what is before us, isn't it? Yes, Your Honor. So, the reason this is relevant—we consider the fact to be extraordinarily relevant for the reason why the statute of limitations would be ran is because, arguably, MAPS pledges that plaintiffs' claims do not fall within the New York statement statute, and to not fall within the New York statement statute, the issue is whether or not a neglected prosecutor existed, which we contend is a highly fact-intensive inquiry. It may be that, but isn't that a question, basically, of state law that's already been decided by the state courts? The state courts characterized this as a dismissal for failure to prosecute, didn't they? Failure to litigate, I think, was Judge Branson's exact words, but we do not contend that that is, in and of itself, a judgment on whether or not a neglected prosecutor exists. We point to cases like Doyle v. American Own Products Corporation, where this court looked beyond a dismissal order and kind of assessed the conduct itself. So, in summary—so, first, in August of 2013, plaintiffs were forced to decide between amending the complaint or moving for summary judgment. Oh, sorry, I read it back. Regarding discovery, plaintiffs had produced thousands of discovery—thousands of documents in 2012 and 2013, which would represent the entirety of what they could produce. But, by contrast, defendants would produce nothing, which resulted in an October 2012 order from Judge Branson demanding that, to the extent applicable, defendants should respond to plaintiffs' D&I with respect to the surviving plaintiffs in 45 days, but NAFTA would refuse to comply, continually responding to fifth-day communications stating that, quote, in answer to your question, NAFTA's no documents or additional interrogatory responses that are responsive to your document requests and interrogatories as modified by the compliance order. May I ask, again, another question in the same line? We have, in some of the cases that you've cited, reviewed a decision of a federal court and said that was not a proper dismissal for failure to prosecute, or that should not be construed as such. But do you have a case in which we have re-characterized what a state court said it was doing, or determined that what the state court did was either incorrect as a matter of state law or did not amount to a failure to prosecute dismissal within the meaning of the state statute? Have we ever done that? Yes, so the main case we look to is Dela Luz. Dela Luz, basically, where the court, I'm not quite sure if they re-characterized the state court. We would, if I want to contend, that we have kind of unique facts in terms of we are, they were incredibly frustrated during the litigation process with the court. And that's kind of a main part of our argument is that assessing the record kind of calls into question the judge's plans in front of the state court for the dismissal order and kind of mischaracterizes what happened. But even if we didn't find a case or didn't cite a case where this court or the lower court re-characterized the state court's conduct, that would be necessary in this case. But we look to a case like Dela Luz, Dela Luz v. Sotile, where basically there was a failure to comply with the stipulation regarding a disclosure, but nonetheless, the conduct did not rise to the level of a neglected prosecutor. Now that was a state court decision, but the analysis would be the same, we would contend. So to make sure I understand, you're not asking us to revisit the fact-finding, the factual determinations that the state court made. I mean, the order says that plaintiffs failed to timely secure new counsel, failed to comply with discovery demands and production of witnesses for depositions, failed to litigate their case, as you say. You're not asking us to say, oh no, they did produce many documents. You're saying that what the state court says amounts to a neglect to prosecute was incorrect and we're supposed to revisit that. Uh, so we certainly don't feel that deference should be given to those fact-findings, that basically Judge Branson saying that failed to timely secure counsel would mean that that's the end of that inquiry. No, we certainly do ask this court to look into the record and see the events around that all in the state court record and cite it in the briefing. So you're saying all those findings were clearly erroneous? Yeah, we certainly would contend that. Um, so the, uh, basically defendant nonetheless, uh, even after, um, the motion for sanctions in February of 2013 by plaintiffs and purported resolution of these issues later, defendant continued not to produce anything for discovery and would acknowledge and email plaintiff's production of such documents, but complained for the first time years after their production that they were not in good order. And separately in 2017, defendant would assemble Judge Branson that did not receive anything from plaintiffs. Uh, defendant did nothing regarding discovery for three or four years. However, to impede plaintiff's motion for summary judgment, defendant in August of 2016, for the first time produced notices of deposition dated March of 2011, which preceded the case's filing. Uh, so when plaintiff filed the notification pursuant to Judge Branson's wrongful requirement, she vacated it in October of 2016, dismissing the summary judgment motion. Note that in July of 2015, Judge Branson expressed, referring to maps that, quote, mapping, telling me, gee, I think I need more discovery. I don't think so. I don't think there's anything left to discover or anything to discover any longer. I think that's been done. And quote, but in mid 2015, the judge's stated opinion that there were no, stated opinion was that there were no outstanding discovery issues in that, that map had yet to express any seriousness for discovery, which stands in stark contrast to maps renewed interest in discovery in 2016. So kind of, this is the meat of it, which is that these events provide necessary context, context for the conditional order where Judge Branson required one plaintiff to produce documents, ignoring that fact, ignoring the fact that they provided everything they had years prior to the Chinese needs from the plaintiff attend depositions in New York. And three of the plaintiffs retained counsel by June 22nd, 2017. Uh, as on the rebuttal time, I think your time expired. Do you want to use some of the rebuttal time now, or do you want to reserve to your two minutes? I'll, I'll, I'll go for a few minutes. Thank you, Your Honor. Okay. We'll hear from the affilee. Thank you, Your Honor. This is Neil O'Mara of Slamstone and Dolan representing NAST. I would like to begin with the disqualification issue briefly. Um, we know we understand that the district court dismissed this action of other grounds, which rendered our disqualification argument moot, but we feel that the violation of the ethical rules and the state court orders was, was very obvious and very intentional and should be addressed by this court. I also note for the court that, um, Anderson and Anderson repeated this ethical violation when, uh, Mr. Buxbaum filed the notice of appeal from the judge's decision, from Judge Abrams' decision to this court. Um, and I explained in my affirmation, which we filed, um, on January 20th or 21st to this court, why the disqualification of Anderson and Anderson, uh, and Mr. Buxbaum should be also extended to Mr. Ginobstable. And I, I call the court's attention to that as well. Um, however, having, having just raised this issue, I will now move on to the statute of limitations. Are there any questions? Okay. Not hearing any questions. Uh, I think it's, on statute of limitations, I think it is, it is undisputed that this claim is outside the statute of limitations and that unless the plaintiff can fit themselves within the statute of limitations, can fit themselves within the safe harbor of CPLR Section 205A, that, uh, this action must be dismissed. And as, as we argued below, the plaintiffs don't meet any of the requirements of CPLR 205A. First, CPLR 205A does not apply, as this court correctly noted, to dismissal of the complaint for neglect to prosecute the action so long as the judge sets forth on the record the specific conduct constituting neglect, which conduct shall demonstrate a general pattern of delay in proceeding with the litigation. So really, I, I think that the appellant's entire approach is completely off, right? This case, uh, Judge Branstad and then the appellate division said very plainly that this case was dismissed for neglect to prosecute. And Judge Branstad set forth on the record the specific conduct which she felt constituted neglect, and she did say that there was a general pattern of delay in proceeding with the litigation. Now all of plaintiff's arguments were made, all of them, everything that you've just heard from plaintiff's attorney was previously argued to the appellate division, and the appellate division rejected all of these arguments. And so I don't believe it's the place or the role of this to essentially extend CPLR 205A to say, well, you know, that the court that gets the second action should dive into the merits of the judge's decision for dismissal to make for dismissal for neglect to prosecute and should delve into whether in fact the specific conduct of the judge set forth on the record, in our opinion, rises to the level of a general pattern of delay. You know, I can, I'm sure the court is familiar with the record, but the number of times in which Judge Branstad mentioned delay is spectacular, as the district court noted. You know, she says, say on page A183 of the record, that having found plaintiff failed to timely secure new counsel and failed to comply with discovery demands and production of witnesses for depositions, plaintiffs have violated this order, failed to litigate their case, and the complaint is hereby stricken. Or similarly, she says on A177, here as laid out in the procedural history, plaintiffs have continued to rotate through counsel each time being admonished discovery must advance in this 2011 matter and further delay would not be tolerated. So I think that Judge Abrams was exactly right when she said that the state court action was plainly, that the state court plainly dismissed the action for neglect to prosecute. And I think that their, that their attempts, I think as the court hit the nail on the head when it said that they failed to find any federal court action where the federal court is essentially reviewed as playing the role of essentially super appeal from the state court, not just the state trial court, but the state appellate court as well, that this court or the federal district court would essentially review the same arguments that were made to the state court a second time and decide whether the state court got it right or wrong. The next issue is that the statute also requires that the plaintiff effect service on the defendant within a six-month period. Now we explained that, and this is something that the judge below did not need to rule on because she dismissed on the neglect to prosecute point, but we explained that service of process was inadequate. Plaintiff's response was to say that we had waived this argument because we had not raised it in our first motion to dismiss the complaint. At this point, I just want to call to the court's attention the case of Stair v. Calhoun, which we cite repeatedly in our brief for other points. That's 2015 U.S. District Lexus 42766. It's an Eastern District of New York case from March 31st, 2015, and that case explains clearly that there are two issues with service of process. Failure of service of process can be argued to show that the court lacks personal jurisdiction over the defendant, which is one argument. That's the argument of personal jurisdiction that can be waived if it's not raised in the first motion of pleading. But there's also an issue of service of process in terms of did the plaintiff comply with CPLR 205A. And part of the plaintiff's burden to show that they complied with CPLR 205A is that they did in fact properly serve the complaint, the new action. And so, Stair v. Calhoun explains very nicely that those two issues are separate. That just because you may have waived the personal jurisdiction defense does not mean that you've complied with CPLR 205. And so, regardless of the waiver argument, the fact that they only served an employee of NAF, that she specifically disclaimed they didn't even serve her, they sort of dropped it in the neighborhood of a clerical employee who said that she did not have authority to accept service of process is insufficient under state law to satisfy the requirement of CPLR 205A. The last question, the most intricate question then, is whether the service, whether service was even attempted within the six-month period. And here, plaintiff relies primarily on one line of state court cases arising from a second department decision in Vasquez v. Wood, where Vasquez v. Wood says, well, you can serve under CPLR 205A, the time to serve is calculated from when the order is served with notice of entry, not when it's entered, not when it's issued by the court. But, as we explained in our brief, the Second Circuit very quickly, only two years later, moved away from that ruling in P. Ju-Tang v. St. Francis Hospital, where it said, no, no, no, no, no, no, no, that the way that it's calculated is based upon the date it was actually entered. And this is consistent with all the state law on the issue, and all the federal cases considering the issue, which is that the six-month period starts when the case is finally decided, and when there's nothing left for the court to do. Ministerial tasks, like entry in the remissiture to the lower court for no purpose whatsoever, you know, they didn't even direct the lower court to enter a judgment dismissing the case, because that had already happened. It does not affect when the six-month period starts. The order on its face says it was entered on October 18th, and October 18th is when the clock began to run. So, these are the points, I think, that were raised in the appeal. I'd not, I'll rest. Thank you very much. We'll hear rebuttal. So, regarding the untimely service argument, the triggering date for the staging statute, six months, is not entirely clear in the law, which is explained more in brief. However, even if service were late, it would have only been very narrowly so, and filing was certainly on time. NAFSA's case is for the proposition that timing is strictly construed, but the cases they cite involve fact-finding the service coming months late, or never at all, and one involves a party that neither filed nor served on time. So, construing substantial compliance with narrowly late service, as ending, as being a ground for dismissal, would be at odds with the longest average carotid liberal purpose of the statute. Plus, late service can be excused in the interest of justice, and should be, if it is filed in this case, to have been untimely. Regarding service being improper beyond that NAFSA arguably waived this argument by failing to include it in its original motion to dismiss, prior to the amendment of the complaint, Joanna Chan let Andre Maga cross the server to reasonably believe she had the authority to accept service in process, such as by failing to expressly disavow that authority, and by appearing in the lobby to accept the document in delivery format. And because she resisted such service, Maga wasn't entitled to serve the documents as he did in the general vicinity. Lastly, NAFSA's argument that the case should be dismissed because it was filed by Mr. Buxholm, no case law establishes that such an extreme result would be necessary or appropriate, and that collateral estoppel did not apply, and is certainly not already in effect, moreover, disqualification in federal court is the responsibility of these courts, and disqualification is, quote, disfavored in this circuit, end quote. Here, the primary concern is not with the enforcement of the ethical rules. I would just end by, additionally, too, just a quick note, the inquiry we contend is not just that, regarding the neglect to prosecute, it's not just that the judge sets forth the conduct on the record, it's also that that conduct must constitute a general pattern of delay. So that would be what gives the court authority to go in and assess it. It's not just whether Judge Branson set forth the conduct, but also whether or not it independently constitutes a general pattern of delay. And then, finally, we would end with just, again, just looking at the broad and global purpose of the statute, which we feel is more than enough to bring the claims within the statutes. Thank you, Your Honor. Thank you both. We'll take the matter under advisement. Thank you. Thank you.